

# NUMBER 13-12-00694-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**HOWARD HAAS,**                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

### On appeal from the 319th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Rodriguez

Appellant Howard Haas challenges his conviction by a jury for theft of copper, a second-degree felony as enhanced by a finding of prior convictions. *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(F)(iii) (West, Westlaw through 2013 3d C.S.); *see also id.* § 12.425(b) (West, Westlaw through 2013 3d C.S.). By his sole issue, appellant argues

that the evidence was insufficient to prove that he was guilty as a party in the theft. We affirm.

## I. BACKGROUND

Appellant was indicted on August 23, 2012 in connection with the theft of copper from a ranch ("the ranch") located near Robstown, Texas:

> [O]n or about June 14, 2012, in Nueces County, Texas, appellant did then and there unlawfully appropriate, by acquiring or otherwise exercising control over, property, to-wit: copper, of the value of less than $20,000, from Jon Box, the owner thereof, without the effective consent of the owner, and with intent to deprive the owner of the property.

The indictment also alleged two previous convictions, which upgraded the state-jail felony offense of theft to a second-degree felony. *See id.* § 12.425(b). Appellant pleaded not guilty, and his case was tried by jury. At the close of evidence, the jury found appellant guilty of the offense of theft of copper, and he was sentenced to fifteen years in prison. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). "The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile the conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en

2

banc) (citing *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)).

Juries are permitted to make reasonable inferences from evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). "Circumstantial evidence alone may be used to prove that a person is a party to an offense." *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

Appellant committed the offense of theft as authorized by the indictment in this case if he appropriated the copper "without the owner's effective consent" and "with intent to deprive the owner of the property." *See* TEX. PENAL CODE ANN. § 31.03 (a), (b)(1). "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* § 7.01(a) (West, Westlaw through 2013 3d C.S.). As applicable to this case, a "person is criminally responsible for an offense committed by the conduct of another if the person, acting with intent to promote or assist the commission of the offense, solicits, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(1) (West,

3

Westlaw through 2013 3d C.S.).

### III. DISCUSSION

By one issue, appellant argues that the evidence is insufficient to sustain the jury's verdict of guilty with regard to the charge of theft of copper.

### A. The Evidence

At trial, the State called Officer Ernest Martinez to testify. Officer Martinez, a detective with the Robstown Police Department, and Officer Isaac DeLeon were dispatched to a ranch near Robstown when Jon Box, caretaker of the ranch, called the police to report that he saw two men and a truck at the ranch. Officer Martinez, the first officer to arrive, saw two men, appellant and Roger Crossland, with a sailboard; it looked like they were tying it down or loading it on the truck. Officer Martinez testified that both men were extremely sweaty; it was an unusual amount of sweat, and Officer Martinez believed it was from hard labor. Officer Martinez saw a bag of copper tubing in plain sight in the middle of the back seat of appellant's truck. Both appellant and Crossland told Officer Martinez that they were there to pick up property for a friend; Crossland even claimed, at one point, that he owned the items. Officer Martinez noticed that the bag that held the copper in the truck had a logo that matched the sailboard. Officer Martinez testified that he questioned and then arrested Crossland. In addition, Officer Martinez testified that the chain locking the gate to the ranch looked as if it had been cut open.

Next, the State called Officer DeLeon, who testified that when he made contact with appellant and Crossland and asked them what they were doing on the ranch, they looked at each other and could not provide an answer. According to Officer DeLeon,

4

appellant had been drinking. His words were slurred, and he was defensive when asked about the copper. Officer DeLeon testified that there was a bag of copper in the truck and a bucket of copper outside the truck. He eventually arrested appellant.

Kathleen Box, part-owner of the property at the ranch, also testified for the State. Kathleen, who arrived at the scene after the police, testified that she had not hired anyone to work at the ranch. Although she was not positive where the copper came from, she was positive that the trash can came from inside the house. Kathleen also testified that the sailboard and the sailboard bag that held the copper belonged to her son.

Jon Box was the State's final witness. Jon testified that he checks on the ranch property anywhere from one to three times a week. Jon stated that when he saw the men on the ranch, he called the police, and waited at the entrance until the police arrived. Jon testified that he was frustrated about recent break-ins on the property. Jon testified that he saw the sailboard, the copper tubing, and a large wire spool in the truck and that those items were from buildings on the ranch. Jon testified that he looked inside the main building on the ranch and noticed copper missing that had been connected to the heater. He said that it was necessary to enter at least two buildings on the property to access all the materials that were found in the truck. In addition, Jon noted that the items were heavy and would have taken two people to load. During cross-examination, Jon also mentioned that the ranch could appear abandoned because of the shrubbery.

After the State rested, appellant testified on his own behalf. At the time of trial, appellant was a 63-year-old parolee and was a partner with his older brother at "Haas Resources." Appellant knew Crossland, but not very well; Crossland had shown up at

5

his door several times asking for a job. Appellant told Crossland about a job in Wood River at his sister's house. Crossland accepted the job and arranged for appellant to drive him to the job site. In the days prior to the job, Crossland asked appellant if they could pick up a sailboard on the day of the job. Appellant testified that he found it strange that Crossland said the sailboard was his, when earlier Crossland described it as abandoned, having seen it at the ranch sixteen weeks prior. On the day of the job, appellant agreed to help Crossland pick up the sailboard. Before the pick-up, appellant stopped at a gas station to buy a beer. Appellant testified that he was driving down the road when Crossland asked him to pull over to get the sailboard. At the pick-up site, appellant testified that Crossland was acting very strange and was moving around very swiftly, running back and forth.

Appellant testified that he was sitting in his truck while Crossland was moving around the ranch; once appellant decided to get out, he fell on the ground and sat down for a while. Appellant testified that he was not able to confront Crossland about the copper because Crossland—a small-statured man—was moving too quickly back and forth. On cross-examination, appellant testified that he was not intoxicated, but just had a minimal amount of beer to "cool off." However, appellant admitted that he was not supposed to drink while on parole. In addition, appellant testified that he was "doing a little thinking" about what exactly Crossland was doing. Appellant testified that when the police arrived at the scene, Crossland was "hollering and screaming" and jumped out of the truck.

Last, James Vreeland testified on appellant's behalf. Vreeland is an attorney in

Nueces County and has known appellant for forty years; he was aware of appellant being on parole. Vreeland testified that appellant is always honest about his wrongdoings. However, on cross-examination, Vreeland stated his belief that honest men will not steal from others.

## B. Analysis

Appellant argues that the evidence was insufficient to prove that he had any intent to act as a party in committing the theft.[1] We disagree.

As noted above, the evidence was sufficient if it showed that appellant was criminally responsible for Crossland's conduct; in other words, the evidence was sufficient if it showed that he acted with intent to assist Crossland in committing the theft, and solicited, encouraged, directed, aided, or attempted to aid Crossland in committing the theft. *See* TEX. PENAL CODE ANN. § 7.02(a)(1). "[T]he possession of a part of the stolen property being sufficient under the rule that from such possession, theft of the whole may be inferred." *Mason v. State*, 321 S.W.2d 591, 593 (Tex. Crim. App. 1959). Jurors may use common sense and apply common knowledge when drawing inferences from the evidence. *Clark v. State*, 952 S.W.2d 882, 886 (Tex. App.—Beaumont 1997, no pet.). In particular, "a defendant's unexplained possession of property recently stolen permits

---

[1] We note that, in its charge, the trial court instructed the jury that appellant could be found guilty if he directly committed the charged offense or was criminally responsible for the conduct of his co-defendant under the law of the parties. The form of the jury's verdict did not specify whether its guilty verdict was based on direct or party liability. In his brief on appeal, appellant challenges only the party-liability theory. Because, under the language of the charge, the jury could have also found appellant guilty as the direct perpetrator, he has not challenged all grounds on which the jury could have convicted him and has thus shown no reversible error. *See* TEX. R. APP. P. 44.2. However, in the interest of justice, and because appellant believes that "[t]he State of Texas prosecuted its case against [appellant] in large part based on the 'Law of Parties,'" we will address appellant's argument that the evidence was insufficient to convict him as a party.

7

an inference of guilt." *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006). "Intent may . . . be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant." *Guevara v. State*, 152 S.W.3d. 45, 50 (Tex. Crim. App. 2004).

Here, the weight of the sailboard, the awkwardly-built wire spool, and Crossland's small stature suggest that appellant had to help lift these objects in order to get them inside the truck. Jon Box's testimony showed that multiple trips between the two properties on the ranch would have been required in order to put the items in the truck. There was also testimony that both men appeared as if they had recently done manual labor. Although appellant testified that he was sweating because he was dizzy and had been drinking, the jury was entitled to disbelieve this testimony in light of the foregoing circumstances. *See Wesbrook*, 29 S.W.3d at 111; *see also Hooper*, 214 S.W.3d at 14. And although arguably the copper was small enough to be carried by one person in several trips, at the very least, it was reasonable for the jury to infer from the evidence that appellant was aware the copper had been put into the truck, whether or not he had done it himself. *See Mason*, 321 S.W.2d at 591. In short, the jury was entitled to disbelieve appellant's testimony that he was too slow and weak to stop Crossland and, instead, was free to conclude from the evidence that appellant participated in the theft.

Finally, the sailboard and the bag holding the copper both had the same label, which indicated they belonged to the Box family and which discredited appellant's version of events, in which the sailboard was unrelated to the copper. *See Clark*, 952 S.W.2d at 886. And when the police initially questioned both men, neither had an answer for why the copper was in the truck and why they were on the property. *See Poncio*, 185 S.W.3d

8

at 905.

Based on the foregoing evidence, it was rational for the jury to conclude that appellant acted with intent to promote the commission of the theft and aided Crossland in committing the offense. In particular, the evidence at trial supported a finding that, under the law of the parties, appellant was criminally responsible for Crossland's conduct. The evidence was sufficient to support appellant's conviction. We overrule appellant's sole issue on appeal.

## IV. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
26th day of June, 2014.