Donald Leroy HITE, Appellant,

v.

The STATE of Texas, Appellee.

No. 620–82.

Court of Criminal Appeals of Texas,
En Banc.

March 16, 1983.

Henry L. Burkholder, III, Garland D. McInnis, Jr., Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Roberto Gutierrez, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

MILLER, Judge.

A two-count indictment was returned against appellant. The first count charged him with burglary of a habitation with intent to commit theft, pursuant to Section 30.02(a)(1) of the Penal Code. The second count charged him with theft of a rifle and a camera under Section 31.03(a) and (b)(1). The jury returned a not guilty verdict on the burglary charge, but found appellant guilty of theft. Punishment was assessed at ten years imprisonment and a $6000 fine.

On appeal, the Court of Appeals for the Fourteenth Supreme Judicial District found the evidence insufficient, and consequently reversed the conviction and ordered that a judgment of acquittal be entered. *Hite v. State* (Tex.Ct.App.—Houston—14th Dist.) (No. C14–81–318–Cr., delivered June 10, 1982). We granted the State's petition for discretionary review to determine whether the acquittal of appellant on the burglary count in any way rendered the evidence insufficient to convict him on the theft count.

As summarized by the court of appeals, the evidence was as follows:

"The evidence introduced at trial revealed that on the evening of March 7, 1981, the house of Jerry and Johnnie Duncan was burglarized while the Duncans were spending the evening out. As was their usual practice, the Duncans left their two small children with their regular babysitter, Tina Marie Simmons. Appellant, Simmons' boyfriend, and another man, Ronnie Pauly, were at Simmons' house when the Duncans dropped off their children between eight and nine o'clock at night. The Duncans picked up their children at approximately 1:00 a.m. and returned home to find it burglarized. The missing items included four guns, several cameras, jewelry and Mr. Duncan's paycheck.

"The State called Tina Marie Simmons as its primary witness. Simmons testified that appellant and Pauly were present when the Duncan children were left on the evening in question. She testified she heard Pauly suggest to appellant that they break into the Duncans' house. She then heard Pauly and appellant leave on Pauly's motorcycle. When they returned a few hours later Pauly was carrying some guns and a pillow case containing cameras and jewelry. Appellant reportedly was not carrying anything in his hands. Simmons testified she told Pauly she did not want the stolen items in her home, so appellant ordered Pauly to take the property out of the house. She further testified that on the

following day Pauly sold the guns to a man named Charles Toledo. Appellant was present at the transaction, but did not participate in the sale or accept any money from Toledo.

"Simmons then testified concerning the stolen paycheck. She stated she first saw the check in the possession of Melissa Wilburn, her brother's girlfriend, approximately one week after the burglary. Simmons testified she saw Wilburn write Jerry Duncan's name on the back of the paycheck and that Wilburn attempted to cash it at a store. Wilburn was unsuccessful and gave the check to appellant. Appellant left with the check, and after obtaining a false identification card, attempted to cash the check at a Foodland grocery store and was arrested.

"The cashier and manager of the Foodland store both testified that appellant brought Duncan's paycheck to the courtesy booth at their store on March 14. Appellant handed over the endorsed check and an identification card containing his picture and Duncan's name. The store manager testified he told appellant he would have to get the check approved because appellant did not have an official Texas Driver's License. He further testified that appellant then became nervous and attempted to leave. The manager and some store employees stopped appellant and forcibly restrained him until the police arrived." *Hite,* supra, slip opinion at pp. 1–3.

Reviewing this evidence, the court of appeals recognized that "an inference or a presumption of a defendant's guilt of a burglary *or of a theft* sufficient to sustain a conviction may arise from the appellant's possession of property stolen or taken in a recent burglary." *Rodriguez v. State,* 549 S.W.2d 747, 749 (Tex.Cr.App.1977) (Emphasis supplied) Of course, "To warrant such an inference or presumption of guilt from the circumstances of possession alone, such possession must be personal, must be recent, must be unexplained, and must involve a distinct and conscious assertion of right to the property by the defendant." *Id.*

Even though appellant did not testify or offer any explanation for his "distinct and conscious assertion of right" in attempting to cash a paycheck one week after it was stolen in a burglary, the court of appeals concluded that the *Rodriguez* rule did not apply. Quoting *McElyea v. State,* 599 S.W.2d 828, 829 (Tex.Cr.App.1980), the court emphasized that personal, unexplained possession of recently stolen property is only sufficient "to sustain the conviction for theft of *that* property." Had the indictment charged appellant with theft of the *paycheck* the court reasoned, "a presumption of guilt of theft of that item of property would have been permissible." *Hite,* supra, slip opinion at p. 4. Because appellant was charged with theft of a rifle and a camera, however, and not with theft of the paycheck, and because no evidence pointed to recent, unexplained, personal possession of the rifle and the camera, no presumption could be made. Finally, the court added (and this is the crux of the opinion), "[s]ince appellant was acquitted of the burglary charge, proof of possession of the paycheck cannot be used by inference to sustain a conviction for theft of a gun and a camera." *Hite,* supra, slip opinion at p. 4.

The first point to note about this logic is that it is internally inconsistent. The court of appeals apparently agreed with appellant's supposition that the jury's verdict acquitting him of burglary necessarily meant that they believed he had nothing to do with the burglary, either as a "principal or a party," and thus was not involved in any way with the *initial theft* of any of the Duncans' property. And, as appellant observes, he was not charged with receiving stolen property knowing it was stolen, but with theft by taking. Hence, appellant claims, his acquittal on the burglary charge negates the very facts necessary to convict him of theft as charged in the indictment— that he stole or helped steal the check on the night of the burglary.

If this argument is accepted, however, it would not have mattered if appellant had been charged with, and convicted of, theft of the paycheck instead of theft of the camera and the rifle. No presumption of guilt of theft of the paycheck "would have been permissible," as the court of appeals thought, for the same reason now urged: That the acquittal of burglary necessarily precluded conviction for theft of *any* of the property, except on a theory not alleged in the indictment (theft by receiving). In other words, the court of appeals failed to see all of the ramifications in accepting appellant's argument.

■ Secondly, however, the court of appeals overlooked the rule that "from the possession by an accused of a *part* of the stolen property, theft of the whole may be inferred and a conviction sustained," as long as "it is shown that the whole of the property was taken at one or the same time." *Mason v. State,* 167 Tex.Cr.R. 516, 321 S.W.2d 591, 593 (Tex.Cr.App.1959) (Emphasis supplied); *see also Yonko v. State,* 444 S.W.2d 933, 934 (Tex.Cr.App.1969).[1] Thus, at least part of the court of appeals' confusion may be attributed to their failure to realize that while *Rodriguez* did not apply, *Mason* did. Properly formulated, then, the issue is this: the law says that when various items of property are stolen at the same time, recent, unexplained, personal possession of any one item is sufficient to support a conviction for theft of *all* the stolen items.[2] In this case, the evidence shows that the paycheck, the rifle, and the camera were all taken in a burglary, and that appellant was found in recent, unexplained, personal possession of the paycheck. Given this, does the fact that the jury acquitted appellant of burglary in any way "rebut" or negate the *Mason* "presumption"[3] so that the evidence is insufficient to support a conviction for theft of the rifle and the camera?

In arguing that the presumption does not apply, appellant first draws our attention to the jury charge. The trial court evidently felt that appellant could not be convicted of both burglary *and* theft, for it instructed the jury that they could convict appellant, if at all, of only *one* offense. In so doing, the court followed the procedure set forth in *Koah v. State,* 604 S.W.2d 156 (Tex.Cr. App.1980):

> "[W]here an indictment alleges two or more offenses arising out of the same transaction, the State may elect during the trial which count it will rely upon to seek a conviction or it may refuse to make an election. The trial court, instead of compelling an election, may submit each of the counts to the jury with the instruction that a conviction can be had on only one of them." *Id.* at 161 (citations omitted)

In addition, however, the court also instructed the jury to consider *first* whether

1. In fairness to the court of appeals, however, we note that the State's brief offered for their consideration not only failed to cite *Mason* or *Yonko,* but totally disregarded appellant's argument, presenting instead the theory that the evidence was sufficient because it showed a "conspiracy" between appellant and Pauly to commit theft. The court of appeals did not mention this theory and the State's prosecuting attorney has not relied on it in the brief before us. We likewise will decline to discuss it.

2. Of course, if such possession of the paycheck would suffice to convict appellant of theft of the paycheck *and* the rifle and the camera, it would necessarily be enough to convict him of theft of *just* the rifle and camera.

3. Part of the problem here is the use of the term, "presumption." The *Mason* rule does not establish a *conclusive* presumption such that once recent, unexplained, personal possession is shown, a jury *must* convict. All *Mason* means is that once such possession is shown, a jury may infer guilt, and that, if they do, an appellate court will not ordinarily interfere with their determination—i.e., the inference from the fact of such possession to the conclusion of guilt of theft will be honored, and the court will sustain the conviction without any more evidence than the fact of such possession. Appellant does not challenge the constitutionality of this "presumption," but only argues that it cannot be invoked here. *Cf. County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

appellant was guilty of burglary, and *only* if they found he was not, or had a reasonable doubt thereof, were they to consider whether he was guilty of theft. In effect, the court treated the theft count as if it were a lesser included offense, and dictated the *order* in which the counts were to be considered. *Koah* does not authorize this type of charge, and appellant objected to requiring the jury to consider burglary first. The State made no objection of any kind to the charge.[4]

Ironically, no matter how detrimental the charge may have seemed to appellant at trial, it supports his argument on appeal. If the trial court had simply instructed the jury that they could only convict appellant of one offense, the jury might well have returned an *uncompleted* verdict form on the burglary count, and a verdict of "guilty" on the theft count. The State would then be able to claim with some force that the jury was actually convinced of appellant's guilt on both counts, and convicted only on the theft count simply because they had to choose.

As it is, however, we are faced with an actual verdict of "not guilty," not an uncompleted verdict form (no verdict). Stressing this acquittal, appellant observes that an abstract charge on the law of parties was given, and urges the following argument in his brief:

> "[T]he jury must have concluded that (1) the Defendant never entered the Duncan's [sic] house on the night of the burglary [sic], (2) the Defendant was not a party to the burglary, or the taking of any item during the burglary, and (3) the Defendant must have come into unlawful possession of the stolen items at a time after the burglary was completed. The

jury was also charged on the law of parties as to the theft paragraph.

> "Once it is concluded that the evidence showed that the Defendant was not guilty of the burglary, either as a principal, or as a party, then it is impossible to see how the theft conviction in this cause can stand. The Defendant was indicted for, and the jury charged, for the offense of theft by appropriating property without the owner's effective consent, Article 31.03(b)(1) Texas Penal Code. It is impossible to see how the Defendant could have appropriated the property under this legal theory, when the jury concluded that the Defendant was never on the premises where the property was initially unlawfully appropriated. Nor can the state use the law of parties, since if the Defendant was not guilty of the tresspass [sic] and burglary under the law of parties, he could not be guily [sic] of any theft during the burglary under the law of parties.

> "It is clear that the jury believed that the Defendant acquired possession of the property at a time after the burglary. But the Defendant was not indicted for, nor the jury charged with, theft by appropriating property that is already stolen, under Article 31.03(b)(2) Texas Penal Code. Also, there is no evidence in the record that the Defendant, either directly or under the law of parties, exercised control over the camera and rifle after the burgarly [sic].

The State's first response to this argument is to claim that the court of appeals gave "undue significance" to the acquittal. By way of a lengthy, erudite argument which we need not recite here, the State maintains not only that burglary and theft

---

4. We can perhaps deduce why appellant objected and the State did not. In closing argument, the prosecutor did his best to persuade the jury to convict on the burglary count (burglary of a habitation may be punished by life imprisonment or a sentence of up to ninety-nine years). By contrast, appellant's attorney contended that if appellant was guilty of any-

thing, it was passing a forged check or, perhaps, theft. Since third degree felony theft is punished considerably less than first degree burglary, appellant in all probability did not want the jury to dwell on the burglary charge first; if the jury was inclined to convict, he would presumably have wanted them to go directly to the theft count.

arising out of the same transaction may be pled in one indictment, but also that a conviction may be had in a single trial for both offenses. While conceding that the trial court had some "questionable" authority to instruct the jury otherwise (several decisions over 100 years old say that in such a case only one conviction may be had in one trial), the State now complains of the charge for the first time, and concludes that the acquittal "cannot be considered as one based on insufficient evidence," but instead must be viewed "as one based on a strict interpretation of the law." In essence, the State is saying that since the jury acquitted under an "erroneous" charge, the acquittal somehow has a lesser significance.

One difficulty with this approach is that it is unconstitutional. In *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), the Supreme Court held that where "a defendant has been acquitted at trial he may not be retried on the same offense, *even if the legal rulings underlying the acquittal were erroneous.*" *Id.* at 437 U.S. 64; *see also Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962) (acquittal may not be undone even if it is "based upon *egregiously erroneous* foundation") (Emphasis supplied). If the State could not, because of *Sanabria,* re-indict appellant for burglary and try again for a conviction, we do not see how we can give the acquittal less weight than any other acquittal. Even if the State were correct in arguing that the jury should have been given the chance to convict or acquit appellant of *both* offenses, they *did* acquit him of burglary. The State forgets, to put it colloquially, that once the buzzer has sounded, once the gun has gone off, or once the last man has struck out—the contest is

over.[5] See *Johnson v. Estelle,* 506 F.2d 347, 352 (5th Cir.1975).

On the other hand, the State is on firm ground when it recognizes that this case really involves the issue of inconsistent verdicts. For try as he might to couch the argument in terms of presumptions and insufficient evidence, appellant is ultimately saying that the jury first decided that he did not steal, or did not help steal, a rifle and a camera, and then turned around and decided that he did. Citing *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), the State relies on no less a personage than Justice Holmes for the proposition that inconsistency in a jury verdict does not matter. *Id.* at 284 U.S. 393–94, 52 S.Ct. at 190–191; *See also Harris v. Rivera,* 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) (quoting Justice Holmes with fondness). To Justice Holmes, logical inconsistency in a jury verdict meant only one thing—jury nullification as far as the acquittal. *Dunn,* supra, at 284 U.S. 393, 52 S.Ct. 190.

We need not decide whether Justice Holmes' logic is to be applied in every case of inconsistent verdicts, however, because we conclude that appellant's acquittal on the burglary count was not logically inconsistent with his conviction on the theft count. On our reading of the evidence, we think it entirely possible that the jury believed that appellant did not himself break into the Duncans' home or help Pauly do so, but that he did help Pauly steal the items once Pauly came out of the house with them. After all, the evidence that Pauly and appellant arrived together at Simmons' home with property taken in the burglary could support the inference that appellant

---

5. The State's argument also reveals a misconception of what an appellate court's proper function is. The State has a legitimate interest in seeing that *one* fair trial takes place, and, within the limits of Article 5, Section 26, of our constitution, we will do everything that we can to protect that interest. This court does not initiate prosecutions, however, nor are we available to make trial decisions for prosecu-

tors. Assuming that the Texas Constitution permits us to review "errors" against the State, we note that the record does not reflect that the prosecutor ever broached the theory advanced here, or suggested that the jury need not elect. And yet, the State's brief is strangely silent as to possible application of the correct contemporaneous objection rule.

helped steal the items, but would not simultaneously compel an inference that he also helped burglarize the Duncans' residence.

In short, based on the evidence they heard, the jury could have rationally[6] acquitted appellant of burglary and yet have convicted him of theft. *See State v. Curry,* 288 N.C. 312, 218 S.E.2d 374 (N.C.S.Ct. 1975). This being true, appellant is wrong in concluding that the acquittal necessarily meant that the jury thought he had nothing to do with the initial taking of the property. Giving full effect to the acquittal of burglary, then, we cannot say it dooms the conviction for theft; even after acquitting appellant of burglary, the jury was still logically entitled to infer from his possession of the paycheck alone that he helped steal the rifle and the camera.[7] Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded to that court for consideration of appellant's remaining ground of error.

TOM G. DAVIS, TEAGUE and CAMPBELL, JJ., concur in result.

---

6. We might, of course, reconcile the verdicts by speculating that the jury acquitted appellant of burglary because they did not believe the Duncans' home was a "habitation." The problem with this type of approach—simply selecting some element required to show burglary, but not theft—is that it ignores the evidence and actually assumes irrationality on the part of the jury. Here, for example, it is almost inconceivable that the jury based their acquittal on a belief that the Duncans did not live in a "habitation." See *Johnson v. Estelle,* supra, at 506 F.2d 350–352.

7. Appellant's citation of *Wingate v. Wainwright,* 464 F.2d 209 (5th Cir.1972), is of no avail. *Wingate* held that the State may not introduce into evidence extraneous offenses of which the defendant has previously been acquitted. *Id.* at 464 F.2d 215, citing *Ashe v. Swenson,* 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1970). The burglary offense here was not being used as an "extraneous" offense,

and, as we have explained, the acquittal in no way "collaterally estopped" the jury from convicting appellant of theft. We also point out that the *Ashe* doctrine of collateral estoppel only applies where there are *two* trials, and the State seeks to relitigate at the second trial some fact question *necessarily* decided against it at the first trial. The similarity between a collateral estoppel argument and an inconsistent verdicts argument is apparent, but the two arguments are not to be equated: different policy considerations obtain where, unlike this case, a defendant faces a *second* trial because the State has refused to abide by a jury's determination of fact in the first trial. Thus, even if a jury is manifestly irrational in returning inconsistent verdicts on a multi-count indictment (again, unlike the case here), at least they have done so at *one* trial, and the rationale behind collateral estoppel will *not* support a complaint.